USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-24-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SHAKA JOHNSON

                              Petitioner,                          12 Civ. 6913 (PKC)

              -against-

                                                                   MEMORANDUM AND ORDER

Mr. DOMINIC ORSINO, in his official capacity as
Warden, Orange County Jail; CHRISTOPHER
SHANAHAM, in his official capacity as Orange
Field Office Director for Detention and Removal;
JOHN T. MORTON, in his official capacity as
Assistant Secretary of U.S. Immigration and Customs
Enforcement; JANET NAPOLITANO, in her official
capacity as the Secretary of the U.S. Department of
Homeland Security; and ERIC HOLDER, in his
official capacity as Attorney General of the U.S.
Department of Justice,

                              Respondents.
-------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          Petitioner Shaka O'Christopher Johnson brings this petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2241.  Johnson has been detained by the Bureau of

Immigration and Customs Enforcement (the "ICE") since January 18, 2012, pending a final

determination of his removal proceedings.  Johnson petitions this Court to order his

immediate release from custody or, in the alternative, to grant a constitutionally adequate

hearing in which Respondents would be required to demonstrate that Johnson's continued

detention is justified.

          Four months ago, an Immigration Judge found Johnson removable, and

ordered him removed from the United States to Jamaica.  Johnson timely appealed this

decision to the Board of Immigration Appeals, triggering an automatic stay of removal.  For

the reasons stated herein, the Court concludes that Johnson's claim has not yet ripened to a due process violation, but that could soon change.  At present, the petition for writ of habeas corpus is denied without prejudice, but the Court will hold a further hearing on July 2, 2013 to re-evaluate Johnson's claim.

BACKGROUND

Johnson, a native and citizen of Jamaica, lawfully entered the United States on a temporary visitor visa on September 3, 2001, at the age of nineteen.  (Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet.") at 20;[1] Return to Habeas Petition ("Return"), Ex. 1 (Record of Deportable Alien).)  In 2006, Johnson applied to adjust his immigration status to that of a lawful permanent resident, based on his marriage to a United States citizen.  (Pet. at 23; Return, Ex. 1.)  His application was denied based on his inadmissibility as a result of a criminal narcotics conviction.  (Return, Ex. 1.)  He has remained in the United States without lawful status following the expiration of his visa.  (Id.)

On May 30, 2006, Johnson was arrested in Westchester County for criminal possession of a controlled substance.  (Return, Ex. 2 (Information).)  On July 25, 2007, Johnson waived indictment and pled guilty to Criminal Possession of a Controlled Substance in the Fourth Degree, a class C felony, in violation of N.Y. Penal Law § 220.09.  (Id. (Uniform Sentence and Commitment; Waiver of Indictment).)  Johnson was sentenced to treatment at St. John's Riverside Hospital Solutions Chemical Dependence Treatment Program.  (Pet. at 39-40 (Discharge Form; Treatment Certificate); Return, Ex. 2 (Uniform Sentence and Commitment).)  Johnson entered this treatment program on September 18, 2007

---

[1] The first page of the Petition is paginated as page 17, rather than page 1.  Citations to the Petition correspond to the pagination utilized therein.

and was granted a successful discharge roughly six months later on March 14, 2008.  (Pet. at 39-40 (Discharge Form; Treatment Certificate).)

Nearly four years later, on January 18, 2012, Johnson was taken into ICE custody and removal proceedings were commenced against him.  (Pet. at 21; Return, Ex. 3.) ICE charged Johnson as removable under 8 U.S.C. § 1227(a)(2)(B)(i) (covering aliens convicted of any crime involving a controlled substance, other than a single offense involving possession of 30 grams or less of marijuana for personal use) based on Johnson's 2007 controlled substance conviction, and under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States without lawful status after the expiration of his visitor's visa.  (Return, Ex. 3.) ICE determined that Johnson's removal charges subjected him to mandatory detention under 8 U.S.C. § 1226(c), precluding a review of his custody by an Immigration Judge (an "IJ"). (Return, Ex. 4.)  On December 17, 2012, after eleven months without a bond hearing, an IJ issued an oral decision ordering Mr. Johnson removed from the United States to Jamaica. (Return, Ex. 5.)  Johnson appealed this decision to the Board of Immigration Appeals (the "BIA").  That appeal is presently pending.

Johnson, appearing pro se, filed this petition for writ of habeas corpus on September 12, 2012.  (Docket #1).  Johnson also submitted an application under 18 U.S.C. § 3006A(g) requesting the Court appoint counsel.  (Docket #3.)  The Court initially denied the application without prejudice, noting that "appointment of counsel at this early stage is not warranted."  (Docket #12.)  However, after receiving and reviewing the government's memorandum of law in opposition to the habeas petition, the Court concluded that additional guidance from counsel might be useful in reviewing the Petition.  (Docket #28.)  Accordingly,

the Court requested that the Pro Se Clerk list this action as eligible for assigned counsel, (id.), and Johnson formally obtained counsel on March 12, 2013, (Docket #36).

Johnson argues that his detention is not authorized under 8 U.S.C. § 1226(c) because he was not taken into ICE custody until nearly four years after his release from state criminal custody.  He also argues that his prolonged detention violates his right to due process under the Fifth Amendment to the United States Constitution.

DISCUSSION

I.       Jurisdiction

This Court has subject matter jurisdiction to review the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(a) & (c).  Section 236 of the Immigration and Nationality Act (the "INA"), codified at 8 U.S.C. § 1226, provides in part that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review."  8 U.S.C. § 1226(e).  Johnson has not challenged the Attorney General's discretion.  Instead, Johnson has challenged the interpretation of "the statutory framework that permits his detention without bail."  Demore v. Kim, 538 U.S. 510, 517 (2003).  The Supreme Court has determined that section 1226(e) does not deprive district courts of jurisdiction to hear such a challenge.  Id. at 516-17.

Neither party has contested this Court's personal jurisdiction.  Venue is proper because "a substantial part of the events . . . giving rise to the claim occurred" within this district.  28 U.S.C. § 1391(e).

A habeas petition should name as respondent "the person who has custody over [the petitioner]."  28 U.S.C. § 2242.  In accord with the "immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement . . .

-4-

the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (citations omitted). Although the Supreme Court in Padilla "left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation," id. at 436 n.8, a "majority of district courts in this Circuit have applied the immediate custodian rule to habeas petitions filed by incarcerated aliens challenging their physical detentions prior to deportation," Santana v. Muller, No. 12 Civ. 430(PAC), 2012 WL 951768, at *2 (S.D.N.Y. Mar. 12, 2012) (citations omitted). Therefore, Dominic Orsino, the warden of Orange County Jail, is likely the only proper respondent in this case, but in the exercise of caution, the Court will refrain from dismissing the other respondents until the July 2, 2013 hearing.

II.       Interpretation of Section 1226(c)

Section 236 of the INA grants the Attorney General authority to detain any alien pending a decision on whether the alien is to be removed from the United States.[2] Although this authority to detain is discretionary in certain circumstances, see 8 U.S.C. § 1226(a), detention is mandatory for aliens who have been convicted of certain enumerated offenses, including crimes involving a controlled substance, see 8 U.S.C. § 1226(c). Aliens detained pursuant to the discretionary detention provision may be afforded the opportunity for an individualized bond hearing before an IJ. 8 U.S.C. § 1226(a). Conversely, aliens detained pursuant to the mandatory detention provision are not eligible for a bond determination. 8 U.S.C. § 1226(c).

---

[2] Although section 1226 grants authority to the "Attorney General," that authority now resides with the Department of Homeland Security, which arrested and is detaining Johnson.

Section 1226(c) provides in part:

Detention of criminal aliens

   (1) Custody

      The Attorney General <u>shall</u> take into custody any alien who . . .

         (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

         (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

         (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

         (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

      <u>when the alien is released</u>, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

   (2) Release

      The Attorney General may release an alien described in paragraph (1) only [under limited circumstances related to witness protection and not applicable to petitioner] . . . .

8 U.S.C. § 1226(c) (emphasis added).

Johnson is charged with removability under 8 U.S.C. § 1227(a)(2)(B) based on his 2007 controlled substance conviction.  (Return, Ex. 3.)  Johnson does not dispute that this offense is covered by section 1226(c)(1)(B), which authorizes mandatory detention of an alien who is deportable by reason of having committed an offense covered in section 1227(a)(2)(B).  Nonetheless, Johnson argues that his detention is not authorized by section

-6-

1226(c).   According to Johnson, the language "when the alien is released" in section 1226(c) describes the specific point in time at which the Attorney General is required to take certain aliens into custody.  Because Johnson was not detained until nearly four years after his release from criminal custody, he argues that section 1226(c) cannot authorize his detention.  Instead, Johnson argues that his detention is only authorized under section 1226(a), thus affording Johnson the possibility of a bond hearing.

This is not the first time that this Court has faced this issue.  In <u>Sulayao v. Shanahan</u>, No. 09 Civ. 7347(PKC), 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009), the petitioner argued that section 1226(c) could not authorize his immigration detention because he was not taken into custody by ICE until four months after his release from state criminal custody.  The Court began its analysis by observing the absence of controlling Supreme Court or Second Circuit precedent interpreting the phrase "when the alien is released."  <u>Id.</u> at *3. The Court then noted that the BIA, the agency tasked with interpreting the INA, had interpreted section 1226(c), and had concluded that it is applicable to aliens such as Johnson whose detentions did not immediately follow their release from criminal custody.  <u>Id.</u> (discussing <u>Matter of Rojas</u>, 23 I & N Dec. 117 (BIA 2001)).  Accordingly, the Court proceeded to analyze the BIA's interpretation of the mandatory detention provision pursuant to <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984):

> Under the two-step analysis set forth in <u>Chevron</u>, this Court must first determine whether section 1226(c) is ambiguous. If it is unambiguous, then Congress's clearly expressed intent is binding upon this Court and the BIA.  If, however, section 1226(c) is ambiguous, this Court must proceed to the second step of the <u>Chevron</u> analysis, and determine whether the BIA's interpretation is permissible.

<u>Sulayao</u>, 2009 WL 3003188, at *3 (internal citations omitted).

First, the Court held that section 1226(c) is ambiguous.  Noting that "[a] statute is ambiguous if it is susceptible to two or more reasonable interpretations," id. (citing Natural Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001)), the Court concluded that

> [t]he word "when," as used in the phrase "when the alien is released," is ambiguous.  As several courts have recognized, "when" can "include[ ] the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D.Va. 2007) (citing 20 The Oxford English Dictionary 209 (2d ed. 1989), and citing The American Heritage Dictionary of the English Language (4th ed. 2000)).  "When" can also mean "at or during the time that." Concise Oxford English Dictionary (11th ed. rev. 2008).  These different definitions lead to two different meanings of the phrase "when the alien is released," and therefore, two different conclusions as to whether petitioner's detention is authorized by section 1226(c).  Applying the first meaning, the phrase "when the alien is released" would mean "at the time that the alien is released," and petitioner's detention may not be authorized under section 1226(c).  If the second definition is used, however, the phrase means "at or during the time that the alien is released." This definition would authorize[] petitioner's detention because he was taken into custody while on parole, i.e., during his release.

Sulayao, 2009 WL 3003188, at *4.

Having found the statute ambiguous, the Court then proceeded to determine whether the BIA's interpretation was permissible:

> In Rojas, the BIA interpreted section 1226(c) to include aliens such as petitioner, who were not taken into custody immediately upon release from incarceration.  It first determined that section 1226(c) was ambiguous because the phrase "an alien described in paragraph (1)" contained in section 1226(c)(2) "does not unambiguously tell us whether it encompasses the 'when the alien is released' clause in [section 1226(c)(1)] or merely references the four categories of aliens described in subparagraphs (A) through (D)." Matter of Rojas, 23 I & N Dec. 117, 120 (2001). To resolve this ambiguity, the BIA analyzed the statute in light of four separate considerations: (1) the ordinary meaning of the

statute's language, though ambiguous, (2) the overall statutory context and goals, (3) the statute's predecessor provisions, and (4) practical considerations.  Id. at 121-24.

First, examining the plain language of section 1226(c), the BIA determined that the phrase "an alien described in paragraph (1)" "seems . . . most appropriately to be a reference to an alien described by one of four subparagraphs, (A) through (D)" because "[t]he 'description' of the alien does not naturally appear to include any or all of the concluding clauses of paragraph (1) . . . ." Id. at 121.  The BIA found that: "[the] 'when released' clause is no more a part of the description of an alien who is subject to detention than are the other concluding clauses . . . [which] simply make it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges."  Id.

The BIA then examined Congress's intent in enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which contained section 1226(c).  It found that "Congress was frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [INS] custody when their proceedings were complete." Id. at 122.  After reviewing several other parts of the INA, the BIA stated: "we discern that the statute as a whole is focused on the removal of criminal aliens in general, not just those coming into [INS] custody 'when . . . released' from criminal incarceration." Id.

Turning to prior versions of the INA, the BIA found instructive former section 242(a)(2), as amended by certain enactments in 1990 and 1991. That provision stated:

"(A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsections (c) and (d) but subject to subparagraph (B), the Attorney General shall not release such felon from custody.

(B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney

General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings."

8 U.S.C. § 1252(a)(2) (1992). The BIA found this provision helpful because the requirements of paragraph (B) applied to all aggravated felons, not just those that were taken into custody at the time of their release. Id. at 123-24.

Finally, the BIA recognized that interpreting section 1226(c) to apply only to those aliens taken into custody immediately upon release would cause practical and analytical problems: "it is not clear where the line would be drawn under [the alien's] reading of the statute. Would mandatory detention apply only if an alien were literally taken into custody 'immediately' upon release, or would there be a greater window of perhaps 1 minute, 1 hour, or 1 day?" Id. at 124.

Sulayao, 2009 WL 3003188, at *5-6 (alterations in original). Upon reviewing the BIA's interpretation of section 1226(c), the Court "[could] not conclude that it is 'arbitrary, capricious or manifestly contrary to the statute.'" Id. at *7 (quoting Chevron, 467 U.S. at 844). Rather, the Court concluded that Rojas is "a permissible interpretation of an ambiguous text, and one that is supported by logic and the legislative history of the statute." Id. The Court therefore held that section 1226(c) authorized the mandatory detention of the petitioner, despite the fact that the petitioner was not detained immediately following his release from state custody. Id.

Johnson, noting that "a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case," urges the Court to "not follow, or . . . at least re-visit" its holding in Sulayao. (Pet.'s Response to Govt.'s Opp. to Pet. for a Writ of Habeas Corpus, dated March 12, 2013 (hereinafter "Pet.'s Response"), at 18-19 (quoting Moore's Federal Practice § 134.02).) Johnson argues that section 1226(c) unambiguously does not authorize his detention. In the alternative, Johnson argues that even if the Court finds the statute

ambiguous, it should not defer to Rojas because Rojas advances an unreasonable interpretation of the statute, Rojas did not speak to the same issues as are present here, and the rule of lenity dictates that the statute should be construed in Johnson's favor.  In support of these arguments, Johnson additionally notes that "the legal landscape has changed significantly signed the Court decided [Sulayao] in 2009," with "a substantial number of courts . . . hav[ing] reached a contrary conclusion."  (Id. at 19.)

Having freshly re-considered the issue, the Court declines Johnson's invitation to depart from the holding of Sulayao.  It is true that a substantial number of courts have since reached a conclusion contrary to the Court's holding in that case.  See, e.g., Vicencio v. Shanahan, No. 12-7560(JAP), 2013 WL 705446 (D.N.J. Feb. 26, 2013); Parfait v. Holder, No. 11–4877(DMC), 2011 WL 4829391 (D.N.J. Oct. 11, 2011); Sylvain v. Holder, No. 11–3006(JAP), 2011 WL 2580506 (D.N.J. June 28, 2011); Castillo v. ICE Field Office Director, No. C12-502-MJP-MAT, 2012 WL 5511716  (W.D. Wash. Nov. 14, 2012); Bogarin-Flores v. Napolitano, No. 12-399, 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012); Dang v. Lowe, No. 1:CV–10–0446, 2010 WL 2044634 (M.D. Pa. May 20, 2010); Khodr v. Adduci, 697 F. Supp. 2d 774 (E.D. Mich. 2010); Valdez v. Terry, 874 F. Supp. 2d 1262 (D.N.M. 2012); Ortiz v. Holder, No. 2:11-cv-1146 DAK, 2012 WL 893154 (D. Utah Mar. 14, 2012); Rosario v. Prindle, No. 11-cv-217-WOB-CJS, 2011 WL 6942560 (E.D. Ky. Nov. 28, 2011).  However, it is also true that a "sizable minority" of courts have reached the same conclusion as Sulayao.  Guillaume v. Muller, No. 11 Civ. 8819 (TPG), 2012 WL 383939, at *5 (S.D.N.Y. Feb. 7, 2012) (citing Sulayao); see, e.g., Diaz v. Muller, No. 11–4029(SRC), 2011 WL 3422856 (D.N.J. Aug.4, 2011) (same, and "concur[ring] with Judge Castel's analysis of this issue, as well as his ultimate conclusion that the interpretation of the Board of Immigration Appeals is

entitled to <u>Chevron</u> deference"); <u>Hernandez v. Sabol</u>, 823 F. Supp. 2d 266 (M.D.Pa. 2011)

(citing <u>Sulayao</u>); <u>Garcia Valles v. Rawson</u>, No. 11–CV–0811, 2011 WL 4729833 (E.D.Wis.

Oct.7, 2011) (citing <u>Sulayao</u>); <u>Sidorov v. Sabol</u>, No. 1:09-CV-01868, 2009 WL 8626352

(M.D.Pa. Dec 18, 2009) (quoting <u>Sulayao</u>); <u>Espinoza-Loor v. Holder</u>, No. 11-6993 (FSH),

2012 WL 2951642 (D.N.J. July 2, 2012); <u>Khetani v. Petty</u>, No. 12-0215-CV-W-ODS, 2012

WL 1428927 (W.D.Mo. Apr. 24, 2012).  Notably, this sizable minority agreeing with <u>Sulayao</u>

includes the only United States Court of Appeals to address this issue, <u>Hosh v. Lucero</u>, 680

F.3d 375 (4th Cir. 2012) (citing <u>Sulayao</u>), as well as four other judges in this district, <u>Santana</u>

<u>v. Muller</u>, No. 12 Civ. 430 (PAC), 2012 WL 951768 (S.D.N.Y. Mar. 21, 2012) (citing

<u>Sulayao</u>); <u>Guillaume v. Muller</u>, No. 11 Civ. 8819 (TPG), 2012 WL 383939 (S.D.N.Y. Feb. 7,

2012) (citing <u>Sulayao</u>); <u>Mendoza v. Muller</u>, No. 11 Civ. 7857 (RJS), 2012 WL 252188

(S.D.N.Y. Jan. 25, 2012) (citing <u>Sulayao</u>); <u>Gomez v. Napolitano</u>, No. 11 Civ. 1350 (JSR),

2011 WL 2224768 (S.D.N.Y. May 31, 2011).  <u>But see</u> <u>Louisaire v. Muller</u>, 758 F. Supp. 2d

229 (S.D.N.Y. 2010) (concluding that <u>Rojas</u> "is wrong as a matter of law and contrary to the

plain language of the statute").

   With great respect for the courts that have held otherwise, the Court cannot

conclude that section 1226(c) is unambiguous.  As discussed in <u>Sulayao</u>, 2009 WL 3003188,

at *4, the phrase "when the alien is released" reasonably could be interpreted to mean either

"at the time that the alien is released" or "at or during the time that the alien is released."  <u>See</u>

<u>also</u> <u>Hosh</u>, 680 F.3d at 379-80 (same); <u>Santana</u>, 2012 WL 951768, at *4 (same); <u>Guillaume</u>,

2012 WL 383939, at *3 (same); <u>Mendoza</u>, 2012 WL 252188, at *3 (same); <u>Gomez</u>, 2011 WL

2224768, at *3 (same).

The Court also disagrees with Johnson's assertion that the BIA's interpretation of section 1226(c) is unreasonable and unworthy of deference.  In order to defer to the BIA's interpretation, the Court "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  <u>Chevron</u>, 467 U.S. at 843 n.11 (citations omitted).  Rather, the Court "review[s] the BIA's interpretation of ambiguous provisions of the INA . . . with substantial deference to the BIA, rejecting its interpretation only if it is 'arbitrary, capricious, or manifestly contrary to the statute.'"  <u>Evangelista v. Ashcroft</u>, 359 F.3d 145, 150 (2d Cir. 2004) (quoting <u>Chevron</u>, 467 U.S. at 844) (internal citations omitted).  For the reasons explained in <u>Sulayao</u>, the BIA's interpretation in <u>Rojas</u> is a "permissible interpretation of an ambiguous text, and one that is supported by logic and the legislative history of the statute."  <u>Sulayao</u>, 2009 WL 3003188, at *7.  Accordingly, the BIA's interpretation is entitled to deference under <u>Chevron</u>.

The analyses provided by those courts that have agreed with <u>Sulayao</u> further reinforce this conclusion.  For instance, after finding the statutory text ambiguous and concluding that the BIA reasonably construed section 1226(c), the Fourth Circuit in <u>Hosh</u> noted:

> Supporting our opinion that the BIA reasonably construed § 1226(c) is the description of the statutory scheme provided by the Supreme Court of the United States in <u>Demore v. Kim</u>, 538 U.S. 510, 518 (2003).  In <u>Demore</u>, the Court considered the constitutionality of § 1226(c) and, in upholding the statute, observed that "Congress adopted [§ 1226(c)] against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens."  <u>Id.</u> (citations omitted).  That backdrop included the fact that federal authorities suffered from a "near-total inability to remove deportable criminal aliens," due in large part to the INS's "failure to detain those aliens during their deportation proceedings" under the statutes previously in force, which gave the

> Attorney General broad discretion to release criminal aliens pending their removal proceedings. Id. at 519 (citations omitted). Because "deportable criminal aliens who remained in the United States often committed more crimes before being removed," id. at 518, and because "[o]nce released, more than 20% of deportable criminal aliens failed to appear for their removal hearings," id. at 519 (citing S.Rep. No. 104-48, at 1 (1995)), Congress endeavored to amend the immigration scheme that was in place before the passage of § 1226(c).

Hosh, 680 F.3d at 380-81 (alterations in original). As aptly stated by another court facing this issue, "[t]his Court thus finds Petitioner arguing for a statutory interpretation that, if adopted, would work to undo what, according to the Supreme Court, Congress was trying to accomplish when it enacted 8 U.S.C. § 1226(c)." Diaz, 2011 WL 3422856, at *3 (discussing Demore to support the court's conclusion that the BIA reasonably interpreted section 1226(c)); see also Hosh, 680 F.3d at 382 ("The negligence of officers, agents, or other administrators, or any other natural circumstance or human error that would prevent federal authorities from complying with § 1226(c), cannot be allowed to thwart congressional intent and prejudice the very interests that Congress sought to vindicate."); Gomez, 2011 WL 2224768, at *3 ("Permitting certain individuals to avoid mandatory detention simply because ICE fails to immediately take them into immigration custody runs counter to [ ] congressional intent."); Mendoza, 2012 WL 252188, at *3 ("Nothing in the text, legislative history, or structure of this statute suggests that Congress intended to treat criminal aliens differently depending on whether they were detained immediately upon release from custody for the crimes enumerated in this section."). Indeed, this Court can find no way to square Johnson's interpretation of section 1226(c) with Congress's purpose in passing the statute, considering that section "1226(c) was undeniably not written for the benefit of criminal aliens facing deportation like [the petitioner]." Hosh, 680 F.3d at 382 (emphasis in original).

In support of his argument that the Court should ignore Rojas, Johnson notes that "the purported premise of Rojas – that Section 1226(c)(1)'s concluding clause may be read as disjointed from the list of enumerated offenses – has been consistently rejected by federal courts and even the BIA, in a later decision."  (Pet.'s Response at 15 (discussing Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009), and Matter of Louis Felipe Garcia Arreola, 25 I. & N. Dec. 267 (BIA 2010)).  Johnson is correct that the First Circuit in Saysana and the BIA in Garcia Arreola rejected the argument that the concluding clause of section 1226(c)(1), which contains the "when the alien is released" phrase, could be read as disjointed from the preceding list of enumerated offenses.  Nevertheless, neither Saysana nor Garcia Arreola alters this Court's conclusion that Rojas is a reasonable decision, deserving of Chevron deference.

First, although Saysana, Garcia Arreola, and Rojas all focused on the proper interpretation of section 1226(c), the question in Rojas – whether section 1226(c) authorizes the mandatory detention of an alien who was not detained immediately following his release from criminal custody – was not at issue in Saysana or Garcia Arreola.  Rather, those cases addressed whether section 1226(c) authorizes the mandatory detention of an alien who is released from criminal custody for a conviction that is not related to the criminal offense that renders the alien removable.  Despite the fact that the resolution of both questions required interpreting the language of section 1226(c), these issues are otherwise unrelated.

More importantly, although Rojas determined that the "when the alien is released" phrase could be read as disjointed from the list of enumerated offenses, this was only one of the grounds on which the BIA ultimately based its holding.  As discussed above, "the BIA analyzed the statute in light of four separate considerations: (1) the ordinary

meaning of the statute's language, though ambiguous, (2) the overall statutory context and goals, (3) the statute's predecessor provisions, and (4) practical considerations." Sulayao, 2009 WL 3003188, at *5 (discussing Rojas). Though Saysana and Garcia Arreola may cast doubt on Rojas's analysis of the ordinary meaning of the statutory language, the analyses of the other factors considered by the BIA confirm the BIA's interpretation of section 1226(c). Indeed, to the extent, if any, that Garcia Arreola implicitly rejects elements of Rojas's ordinary-meaning analysis, such a rejection in no way repudiates Rojas's holding, for the BIA in Garcia Arreola explicitly reaffirmed Rojas. Garcia Arreola, 25 I. & N. Dec. at 272 n.4 ("We . . . do not recede from Matter of Rojas, 23 I. & N. Dec. 117.").

Finally, Johnson attempts to circumvent Rojas by arguing for application of the rule of lenity. "The rule of lenity provides that 'lingering ambiguities in deportation statutes' must be construed 'in favor of the alien.'" Ruiz-Almanzar v. Ridge, 485 F.3d 193, 198 (2d Cir. 2007) (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 320 (2001)). However, "[t]he rule of lenity is a rule of last resort, which [courts] apply 'only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning and the BIA has not offered a reasonable interpretation of the statute.'" Adams v. Holder, 692 F.3d 91, 107 (2d. Cir. 2012) (quoting Ruiz–Almanzar, 485 F.3d at 198). As a matter of law, "[t]he rule of lenity . . . cannot overcome a reasonable BIA interpretation entitled to Chevron deference." Mizrahi v. Gonzales, 492 F.3d 156, 174-75 (2d Cir. 2007). Because the Court has concluded that the BIA's interpretation of section 1226(c) is reasonable and entitled to Chevron deference, the Court has no occasion to apply the rule of lenity. See also Hosh, 680 F.3d at 384 ("[T]he conditional requirements needed to invoke Chevron do exist, and we therefore rely on Chevron instead of the rule of lenity.").

In sum, for the reasons provided above as well as the reasons articulated in Sulayao, the Court concludes that section 1226(c) is ambiguous, and that the BIA's interpretation of the statute is permissible.  Accordingly, Johnson's detention is authorized by section 1226(c).

III.     Johnson's Due Process Argument

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  Reno v. Flores, 507 U.S. 292, 306 (1993) (citation omitted).  This right to due process applies to all aliens "whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Consequently, although the Court has concluded as a matter of statutory construction that Johnson's detention is authorized by section 1226(c), the Court must still determine whether Johnson's continued detention without an individualized bond hearing violates Johnson's right to due process.

In Demore v. Kim, 538 U.S. 510, 531 (2003), the Supreme Court rejected a facial challenge to the constitutionality of section 1226(c), holding that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  However, the Supreme Court repeatedly qualified its holding, noting that mandatory detention is permissible for the "limited," id. at 526, 529 n.12, 531, "temporary," id. at 531 n.13, and "brief period necessary for . . . removal proceedings," id. at 513, 523, and emphasizing that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," id. at 530.  Indeed, Justice Kennedy, concurring in the judgment, acknowledged a significant limitation on the scope of the Court's holding, recognizing that

"since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring) (citation omitted).

In order to avoid running afoul of the Due Process Clause, numerous United States Courts of Appeals have interpreted section 1226(c) to contain an implicit limitation on unreasonable or unjustified detention. See Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3rd Cir. 2011) ("[W]e conclude that [section 1226(c)] implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community."); Ly v. Hansen, 351 F.3d 263, 268 (6th Cir. 2003) ("[W]e hold that the INS may detain prima facie removable aliens for a time reasonably required to complete removal proceedings in a timely manner.  If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings."); Rodriguez v. Robbins, __ F.3d __, No. 12–56734, 2013 WL 1607706, at *6 (9th Cir. 2013) ("[W]e conclude that, to avoid constitutional concerns, § 1226(c)'s mandatory language must be construed 'to contain an implicit reasonable time limitation, the application of which is subject to federal-court review.'" (quoting Zadvydas, 533 U.S. at 682)); see also Hussain v. Mukasey, 510 F.3d 739, 743 (7th Cir. 2007) (similar).  Although the Second Circuit has yet to address this constitutional issue in a published opinion, numerous district courts in this circuit have adopted analogous interpretations of section 1226(c).  See, e.g., Monestime v. Reilly, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010); Scarlett v. U.S. Dept. of Homeland Sec. Bureau of Immigration and

Customs Enforcement, 632 F. Supp. 2d 214, 221-23 (W.D.N.Y. 2009); Adler v. U.S. Dept. of Homeland Sec., No. 09 Civ. 4093(SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009); D'Alessandro v. Mukasey, 628 F. Supp. 2d 368, 385 (W.D.N.Y. 2009) (adopting the report and recommendation of Victor E. Bianchini, United States Magistrate Judge); Fuller v. Gonzales, No. 04 Civ.2039SRU, 2005 WL 818614, at *5-*6 (D.Conn. Apr. 8, 2005).

   Johnson has now been detained for fifteen months without the opportunity for an individualized bond hearing.  This period of detention plainly exceeds the typical five-month period emphasized by Demore, as well as the six-month period that was held constitutionally permissible in that case.  See Demore, 538 U.S. at 530.   Nevertheless, the Supreme Court did not set a bright-line outer limit for what constitutes a permissible period of detention.  See id.; see also Diop, 656 F.3d at 233 ("We decline to establish a universal point at which detention will always be considered unreasonable."); Ly, 351 F.3d at 271 (refusing to establish a "bright-line time limitation" for pre-removal detention).  Some courts in this circuit have upheld periods of detention similar in length to Johnson's, see, e.g., Adler, 2009 WL 3029328, at *2 (finding fifteen-month detention constitutional); Johnson v. Phillips, No. 10CV480A, 2010 WL 6512350, at *6-*7 (W.D.N.Y. Dec. 20, 2010) (report and recommendation of Hugh B. Scott, United States Magistrate Judge) (seventeen months), adopted by, 2011 WL 1465448 (W.D.N.Y. April 18, 2011); Andreenko v. Holder, No. 09 Civ. 8535(CM)(JCF), 2010 WL 2900363, at *3-*4 (S.D.N.Y. Jun. 25, 2010) (report and recommendation of James C. Francis IV, United States Magistrate Judge) (thirteen months), adopted by, No. 09 Civ. 8535(CM)(JCF) (S.D.N.Y. Oct. 26, 2010), while others have determined that individualized bond hearings were constitutionally required, see, e.g., Monestime, 704 F. Supp. 2d at 459 (requiring bond hearing for alien detained eight months);

Hyppolite v. Enzer, No. 07-729(JBA), 2007 WL 1794096, at *1 (D.Conn. June 19, 2007) (fifteen months).  As these cases suggest, "the legal analysis here does not involve simple arithmetic."  Tkochenko v. Sabol, 792 F. Supp. 2d 733, 741 (M.D.Pa. 2011) (adopting the report and recommendation of Martin C. Carlson, United States Magistrate Judge).  Rather, the Court must assess the duration of the detention in proper context, considering factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention.  See Monestime, 704 F. Supp. 2d at 458-59; Tkochenko, 792 F. Supp. 2d at 740-43; see also Diop, 656 F.3d at 232-33 (noting that the due process analysis under section 1226(c) is "necessarily . . . a fact-dependent inquiry that will vary depending on individual circumstances").

Consideration of these factors leads the Court to conclude that Johnson's due process rights have not been offended by his detention.  Johnson was detained for eleven months before an IJ ruled on his removal, an extended period of detention.  On December 17, 2012, an IJ ordered Johnson removed.  The sole reason that Johnson continues to be in ICE custody is the fact that Johnson chose to appeal the IJ's removal order.  Although Johnson indisputably "has every right to seek any relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified."  Andreenko, 2010 WL 2900363 at *4; see Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir. 1991) (holding that petitioner-alien could "not rely on the extra time resulting [from his pursuit of available legal remedies] to claim that his prolonged detention violates substantive due process"); see also Diaz, 2011 WL 3422856, at *4 (quoting Andreenko and holding that petitioner "cannot substantially prolong proceedings in Immigration Court and then complain

that his constitutional rights have been violated because of the length of the ensuing

detention"); Adler, 2009 WL 3029328, at *2 ("Although it is Adler's right to seek relief from

deportation, the delays caused by his motions should not be attributed to the government.");

Thevarajah v. McElroy, No. 01-CV-3009, 2002 WL 923914, at *5 (E.D.N.Y. April 30, 2002)

(noting that petitioner-alien's appeal of IJ's removal order, while "entirely understandable,"

does not "permit an alien to rely on the [resulting] lengthening of detention . . . to claim that

his prolonged detention violates substantive due process") (citations omitted).

       The Court rejects the contention that the foregoing analysis "effectively

punish[es] [Johnson] for pursuing applicable legal remedies." Leslie v. Attorney General of

U.S., 678 F.3d 265, 271 (3rd Cir. 2012) (quoting Oyedeji v. Ashcroft, 332 F. Supp. 2d 747,

753 (M.D.Pa. 2004)); see also D'Alessandro v. Mukasey, 628 F. Supp. 2d 368, 385-86

(W.D.N.Y. 2009) (agreeing with Oyedeji that "'the price for securing a stay of removal

should not be continuing incarceration,' and that an alien 'should not be effectively punished

for pursuing applicable legal remedies'" (quoting Oyedeji)).  Simply put, Johnson's continued

detention has become a "consequence of efforts to afford [Johnson] due process." Miller v.

Shanahan, No. 09 Civ. 9712(WHP), 2010 WL 481002, at *3-*4 (S.D.N.Y. 2010) (denying

alien's habeas petition despite prolonged detention where "removal proceeding would have

been completed almost a year ago" but for petitioner's "efforts to contest his removal"); see

also Prince v. Mukasey, 593 F. Supp. 2d 727, 735-36 (M.D.Pa. 2008) ("While this Court

would not, in any way, even infer that petitioners should not file appropriate documents

challenging their detention or the reasons for detention, petitioners . . . must know that their

own conduct has to be included in determining whether or not a 'reasonable time' was

exercised by the authorities in determining the proper response to any assertions made either

by Petitioner or the Government.").  Accordingly, in determining that Johnson's detention is

not unreasonable, the Court properly takes into account the fact that Johnson's continued

detention is a result of Johnson's choice to appeal the IJ's removal order.  Cf. Demore, 538

U.S. at 530-31 ("In sum, the detention at stake under § 1226(c) lasts roughly a month and a

half in the vast majority of cases in which it is invoked, and about five months in the minority

of cases in which the alien chooses to appeal. Respondent was detained for somewhat longer

than the average [five-month period] . . . but respondent himself had requested a continuance

of his removal hearing.").

                Furthermore, there is no indication that Johnson's continued detention pending

resolution of his appeal to the BIA will last indefinitely or for a lengthy period of additional

time.  Significantly, if Johnson's appeal is denied and a final order of removal is entered

against him, there will be no impediment to his deportation.  This distinguishes the instant

case from the situation in Monestime v. Reilly, 704 F. Supp. 2d 453 (S.D.N.Y. 2010), upon

which Johnson heavily relies.  (See Pet.'s Response at 22-24 (discussing Monestime).)  Judge

Pauley, in granting Monestime's habeas pretention, focused on the fact that "[t]he 18-month

moratorium on deportations to Haiti suggests that Monestime will be held for at least two

years in ICE detention centers without the opportunity to argue for release."  Id. at 458.  Thus,

Judge Pauley found that "Monestime faces a likelihood of indefinite detention by ICE."  Id.

Here, conversely, "the available statistical evidence reveals that DHS removes Jamaican

citizens to Jamaica on a regular basis, indicating that there are no institutional barriers to

petitioner's removal and repatriation."  Williams v. Holder, 2013 WL 1352306, at *5

(W.D.N.Y. April 3, 2013); see also id. at *5 n.4 ("DHS reports show that in fiscal year ('FY')

2009, a total of 1,664 aliens were repatriated to Jamaica; in FY 2010, 1,487 aliens were

repatriated to Jamaica; and in FY 2011, 1,474 aliens were repatriated to Jamaica." (citing

DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-

immigration-statistics/2011)).  Compare Monestime, 704 F. Supp. 2d at 458; Ly v. Hansen,

351 F.3d 263, 266 (6th Cir. 2003) (granting habeas relief in part because "removal is not

currently foreseeable due to the lack of a repatriation treaty between the United States and

Vietnam"), with Luna-Aponte v. Holder, 743 F. Supp. 2d 189, 197-98 (W.D.N.Y. 2010)

(denying habeas relief where, "[s]ignificantly, there is absolutely no impediment to

Petitioner's eventual deportation . . . . there is nothing preventing him from being deported to

the Dominican Republic").  The fact that Johnson's appeal to the BIA became fully briefed in

early March 2013 further suggests that Johnson's detention is finite and near conclusion.  Cf.

Fuller v. Gonzales, No. 04 Civ.2039SRU, 2005 WL 818614, at *5-*6 (D.Conn. Apr. 8, 2005)

("Moreover, there is no indication that Fuller's section [1226(c)] detention is anywhere near

over.  The BIA has only recently ordered briefing in her case, and, because the government is

arguing that more evidence must be taken in Fuller's case, it is likely that the most the BIA

will do is remand the case to the Immigration Judge."); Tkochenko, 792 F. Supp. 2d at 739-41

("The BIA, in turn, has flatly stated that Tkochenko can expect no relief from it in the

foreseeable future, advising the parties that: '[b]ecause of the Board's heavy caseload, it

cannot be predicted when a decision will be rendered.'  This notice effectively informed

Tkochenko that there is no identifiable end to her current detention.") (internal citations

omitted) (alteration in original).

       Finally, Johnson's detention is not unjustified.  "[T]he justification for 8 U.S.C.

§ 1226(c) is based upon the Government's concerns over the risks of flight and danger to the

community . . . ."  Demore, 538 U.S. at 532 (Kennedy, J., concurring).  Johnson argues that

public-safety factors do not justify his prolonged detention because it has been almost seven years since he committed the criminal offense that rendered him removable, and five years since he was discharged from custody for that offense.  Be that as it may, the flight-risk justification emphasized in Demore is still applicable to Johnson's detention.  An IJ has already ordered Johnson removed, and Johnson has made no showing that his appeal to the BIA has merit.  Johnson was afforded full due process when he waived indictment and pled guilty in New York state court to one count of Criminal Possession of a Controlled Substance in the Fourth Degree, and Johnson has presented no evidence showing that this conviction does not render him removable under 8 U.S.C. § 1227(a)(2)(B)(i).  Cf. Hyppolite, 2007 WL 1794096, at *1 (finding petitioner-alien not to be a flight risk based on undisputed evidence showing a "reasonable likelihood that petitioner will not actually be ordered removed"); Tkochenko, 792 F. Supp. 2d at 739-41 ("Indeed, granting [habeas] relief is particularly appropriate here, where it is evident that Tkochenko has made a substantial showing that she may prevail on the merits [of her removal proceedings] . . . ."); Luna-Aponte, 743 F. Supp. 2d at 197-98 n.9 (W.D.N.Y. 2010) (denying habeas relief where "Petitioner has not demonstrated how his [immigration] appeal . . . has merit.").  Therefore, "[t]he primary justification for detention under [section 1226(c)] – curbing the risk that a deportable alien will flee – . . . remains relevant to [Johnson's] case, and it cannot be said that his detention is unjustified." Adler, 2009 WL 3029328, at *2; see also Miller, 2010 WL 481002, at *4 (quoting Adler and finding that petitioner-alien's detention was not unjustified; denying habeas relief).

Having considered the totality of the circumstances, the Court concludes that Johnson's detention is not unreasonable or unjustified.  Accordingly, the Court denies Johnson's habeas petition to the extent that Johnson seeks immediate release or an

individualized bond hearing.  Nevertheless, the Court notes that Johnson's indefinite detention without a bond hearing would raise substantial constitutional concerns.  See Demore, 538 U.S. at 528; Zadvydas, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").  Accordingly, the parties are ordered to appear before the Court on July 2, 2013, at 3:00 p.m., in order to apprise the Court of Johnson's pending appeal to the BIA.  If no progress has been made towards the resolution of Johnson's appeal, or if the BIA has rendered a decision that would result in further mandatory detention under section 1226(c), the Court may, at that time, reconsider whether Johnson's continued detention is reasonable and justified, and whether Johnson is entitled to a bond hearing.

## CONCLUSION

For the reasons discussed, and to the extent provided above, Johnson's petition for writ of habeas corpus is DENIED without prejudice to renewal at the hearing on July 2, 2013 at 3:00 p.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      April 23, 2013